BEER, Judge.
Plaintiff-appellant, John Richards (hereafter, Richards) was injured in the course and scope of his employment while working as a laborer for the Parish of Pla-quemines on October 25, 1965. He was removing debris caused by Hurricane Betsy when he experienced pain in his back and as a result was treated intermittently until his discharge as an outpatient from Charity Hospital in January, 1966. The Parish of Plaquemines is insured by The Travelers Insurance Company (hereafter, Travelers).'
Plaintiff filed a workmen’s compensation suit in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines in January of 1967 (just in time to interrupt prescription), but because of various delays his alleged back disability claim was not tried until October, 1970. After all the testimony at the original trial of the case had been taken, including testimony of two doctors taken by deposition after trial, the plaintiff changed his basic contentions with respect to liability from disability resulting from actual injury to disability due to conversion reaction or traumatic neurosis. The trial court, consistent with the spirit of the compensation act, permitted amendment to plaintiff’s original petition in order to give him the opportunity to enlarge his pleadings and go forward with the proof required to support his new contentions. This ultimately resulted in the court’s setting a date for the continuation of the trial and, thereafter, hearing the testimony of Dr. Lindsay Graham, a psychiatrist, on March 29, 1973.
Judgment was rendered in June 1974. Except for certain minor bookkeeping adjustments, the trial court dismissed Richards’ claim for benefits beyond the date of his medical discharge in 1966.[1] He appealed devolutively in July 1974. The trial court granted several extensions for the filing of transcript and the appeal was finally lodged in this court on August 13, 1975.
We affirm.
In Canter v. Koehring Company, 283 So.2d 716 (La.1973) Justice Tate made it clear that:
“When there is evidence before the trier of fact which, upon its reasonable *622 evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
In this case, there is such evidence, there is such evaluation of credibility and, accordingly, there is such basis for the trial court’s finding.
Could a different trier of facts have made a different finding? Yes. But this case must, we believe, turn on the credibility findings of this trial judge who, obviously balanced the testimony of the plaintiff and his witnesses against the plaintiff’s long uninterrupted post-accident work record (sometimes totalling 621/2 hours per week) and reached his ultimate conclusion.
Although Dr. Lindsay Graham’s testimony is uncontroverted by the testimony of another psychiatrist, we believe that the trial court, who heard Dr. Graham’s description of his single, forty-five minute examination of plaintiff had the right, and in fact the duty, to disregard it if he felt that it was without merit.
The record indicates the trial judge’s interest in Dr. Graham’s testimony and an obvious effort on the part of the trial judge to carefully probe the basis for that physician’s findings. All factors considered, we are not able to conclude that the trial judge manifestly erred in finally disregarding Dr. Graham’s testimony. Dr. Graham’s testimony regarding his single examination of Richards was not given until eight years after the accident and three years after his examination. Whether this time factor played a part in the trial court’s overall weighing of this evidence is only speculative but requires mention.
Plaintiff denied any previous back injury but the evidence indicated that his testimony to this effect was inaccurate. This obvious inconsistency in plaintiff’s testimony may have been critical in the trial court’s deliberations which lead to the rejection of plaintiff’s demands. Again, we can only speculate.
Essentially uncontroverted in these proceedings is the finding, expressed by Dr. George R. Cary, Jr. that Richards had “No objective evidence of orthopedic injury relating to an accident stated to have occurred on October 12, 1965.”
Dr. Cary found no neurological deficit and concluded that Richards was able to function in his usual work activity at this time and needs no medical treatment for his condition.”
Dr. Jack Wickstrom’s medical findings were essentially the same as those of Dr. Cary but did indicate (though outside his field of expertise) that conversion reaction could be a possible explanation of Richards’ continued complaints. For a reviewing court we note that Dr. Wickstrom did find objective indication of what could be possible nerve involvement (real or resulting from conversion reaction?) because of a pattern of diminished sensation. This examination was conducted almost five years after the alleged accident. We believe that the materiality of Dr. Wick-strom’s testimony was also subject to the manifest error rule noted above.
We determine the issues in this case to be: (1) Was John Richards obliged to *623 work in pain at the manual labor jobs which he has faeld subsequent to his alleged injury? (2) Was the pain sufficiently severe to be disabling within the applicable provisions of the workmen’s compensation act? (3) Was the pain a result of conversion reaction precipitated by the injury of October 25, 1965 ?
The record contains ample support for the trial judge’s factual determination that the first two questions should be answered in the negative. Having reached that conclusion, consideration of the third question is essentially moot. But even if the third question had to be answered by the trial judge, we cannot say that he manifestly erred in choosing to disregard Dr. Graham’s opinion. That opinion was based upon one forty-five minute interview with Richards and necessarily depended upon factual representations made by Richards to Dr. Graham. If the trial judge, in painstakingly considering all of the testimony and related evidence, had come to the conclusion that Richards’ representations were not worthy of belief, then he surely had a right to conclude that Richards’ representations to Dr. Graham were, likewise, so tainted. His testimony could not be “laundered” simply by passing it into Dr. Graham’s ears and out Dr. Graham’s mouth in different words but based on the same representations.
Furthermore, there is sufficient equivocation in the apparent final determinations reached by Dr. Graham to conclude that, even unrefuted, they do not totally support plaintiff’s claimed disability.
This court has repeatedly observed that claims of this type should be scrutinized with great care in order to prevent an injustice from occurring. We believe that such scrutiny was brought to these proceedings by the district judge who heard and saw the witnesses. Available to him were all of the senses that combine to emit the ultimate signal: true or false. As instructed by the Supreme Court, we accord significance to the trial judge’s “feel” or “touch” or, to be basic, “gut reaction.”
It is possible, as previously noted, that the trial judge could be wrong but we see no compelling basis for substituting our judgment for his and, accordingly, affirm.

Affirmed.

SCHOTT, J., concurs.
GULOTTA, J., dissents.

. The judgment in favor of Richards and against Travelers was in the amount of $145 (covering the difference between the $32.50 per week incorrect computation paid by Travelers for 58 weeks and the $35 correct computation acknowledged by all parties at the trial).